UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**RICHARD WILLIAMS, JR.,**

      **Plaintiff,**

**v.**                                              **Case No: 5:14-cv-10-Oc-10PRL**

**DR. OLGA GARJALES, et. al.,**

      **Defendants.**

---

## REPORT AND RECOMMENDATION[1]

    This *Bivens*[2] action comes before the Court for consideration of three dispositive motions filed by the Defendants: (1) Dr. Olga Garajales's Motion to Dismiss (Doc. 46); (2) Tamyra Jarvis and Minerva Perez's Motion for Summary Judgment (Doc. 47); and (3) Dr. Rolando Newland's Motion for Summary Judgment (Doc. 48).   The Defendants move for the dismissal of, or the entry of summary judgment on, the Plaintiff's claims related to the medical care he received while incarcerated at the Federal Correctional Complex at Coleman (FCC Coleman) and contend that the Plaintiff's allegations and uncontroverted facts fail to establish an Eighth Amendment claim for inadequate medical care.   The Plaintiff, proceeding *pro se* and *in forma pauperis*, has

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions.   See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   See 11th Cir. R. 3-1.
[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

responded in opposition.   (Doc. 50).   Upon referral (see Doc. 63), I recommend dismissal of Plaintiff's claims against Dr. Grajales on the basis of absolute immunity, and dismissal of the clams against all of the Defendants on the basis of qualified immunity.

## I.   BACKGROUND

The Plaintiff is a federal inmate who was previously confined at FCC Coleman.[3]   In his Amended Complaint (Doc. 17), he alleges that the Defendants violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment. (Doc. 17).   Specifically, he claims that Defendants failed in their obligations to "do whatever possible to give me adequate medical treatment" and "did nothing to remedy my pain."   (Doc 17, p. 8, 10).   Plaintiff's complaint relates to alleged inadequate care he received for his "extreme pain" in his pelvic, hip area, and left leg due to chronic disc disease.   (Doc. 17, p. 8).   He brings suit against two prison physicians, Dr. Olga Grajales and Dr. Rolando Newland, as well as two prison administrators, Tamyra Jarvis and Minerva Perez.

Plaintiff alleges that beginning in December 2012, he began going to sick call with complaints of extreme pain caused by chronic disc disease, but that he was disregarded or received inadequate care.   (Doc. 17, p. 7).   He also alleges that Dr. Newland failed to follow-up on an x-ray that showed a radiopaque density in his pelvic region.   (Doc. 17, p. 7).

In support of his claim, Plaintiff has submitted copies of records, including medical records, numerous emails from Plaintiff to the Health Services Staff, and inmate requests to staff, the majority of which include statements from Plaintiff requesting medication or treatment due to his pain. (Exhibits to Doc. 50).   Plaintiff also has submitted declarations from fellow inmates

---

[3] Plaintiff recently filed a notice of change of address stating his address was at FCI Petersburg, Virginia. (Doc. 64).

describing their "very poor medical treatment" at FCC Coleman, and their observations of Plaintiff's back pain.  (*See, e.g.,* Docs. 52-57).  Meanwhile, Defendant Dr. Olga Grajales has submitted her own declaration describing the course of Plaintiff's treatment for his back and health problems.  (Doc. 47-3).  Notably, aside from self-serving opinions of Plaintiff and his fellow inmates, nothing proffered by Plaintiff directly contradicts or is inconsistent with the factual evidence submitted by Defendants, particularly the summary of Plaintiff's care contained in the declarations of Dr. Grajales and Dr. Newland, one of Plaintiff's treating physicians.  (Docs. 47-3 & 48-3).

Dr. Olga Grajales is Clinical Director at FCC Coleman and is also a Captain in the United States Public Health Service.  (Doc. 46-1, ¶ 1).  Dr. Grajales explains that inmates at Coleman can request medical treatment in two ways: (1) by reporting to sick call if they have a problem they believe requires immediate attention; and (2) by submitting a request for routine care through a staff request.  (Doc. 46-1, ¶ 4,5).  If an inmate comes to sick call or is seen during a sick call visit, the visit is recorded in the Bureau Electronic Medical Record (BEMR) system.  (Doc. 46-1, ¶4).

Although Plaintiff asserts that he went to sick call daily, the BEMR record shows that he went to sick call on November 26, 2012, December 18, 2012, January 23, 2013, and March 1, 2013.  Plaintiff also missed a call out for sick call on February 25, 2013, and was seen in his unit by a nurse on June 28, 2013.  He was seen by staff physicians on December 27, 2012, January 15, 2013, April 23, 2014, July 17, 2013 (at which time a referral was made for an orthopedic consultation), July 19, 2013, and November 12, 2013.  Plaintiff was also seen by an orthopedic doctor on August 27, 2013 and by a neurologist on March 4, 2014.  (Doc. 46-1, ¶ 4).  Plaintiff was also seen in the chronic care clinic.  (Doc. 46-1, ¶ 7).

As explained in the declaration of Dr. Rolando Newland, he examined Plaintiff's x-rays, adjusted his medication and, when conservative treatment did not resolve the problem, referred Plaintiff for an orthopedic consult and MRI.   Ultimately, Dr. Newland recommended neurosurgery.   (Doc. 48-3, ¶¶ 8-12).

In relation to Plaintiff's suggestion that medical personnel failed to follow up on "spots" seen in a January 11, 2013 x-ray, Dr. Grajales explains that another x-ray was ordered specifically to look for "radio opacity on lower pelvis/uncertain etiology."   That x-ray was taken on January 24, 2013, and the radiologist's findings were negative except for a side marker, which is a marker placed by the radiologist to assist in reading the x-ray.   (Doc. 46-1, ¶ 9).   Dr. Grajales states, "after reviewing the medical record in this case, I see nothing that would indicate the radio opacities were in any way indicative of any of Williams' complaints about back pains or other medical condition. . . . It is also my opinion that after the test for radio opacities was negative, there was no further need for medical testing."   (Doc. 46-1, ¶10).

Dr. Grajales also explains that the x-ray was negative except for mild degenerative disc disease, a condition that can cause pain.   (46-1, ¶ 11).   Dr. Grajales notes that the medical record indicates that Plaintiff was seen on several occasions regarding complaints of back pain, and received objective neurological examinations, and was treated with several different regimens of pain medication which appeared to be adequate.   There were no objective findings of significant back problems from April through June 2013.   (Doc. 46-1, ¶ 12).    In April, Dr. Lee noted that Plaintiff was "at treatment goal," meaning that his complaints were controlled by the treatment provided.   (Doc. 46-1, ¶. 12).   Dr. Grajales opines that the treatment Plaintiff received from December 2012 through June 2013 was consistent with the standard of care expected of general practitioners caring for a patient with complaints of back pain.   She states that she does not believe

any further tests, including CT or MRI, were called for, and that the record does not reflect that any persons offering medical treatment were indifferent to Plaintiff's complaints.   (Doc. 46-1, ¶ 13).   Dr. Newland concurs, stating that Plaintiff's treatment was appropriate for his condition. (Doc. 48-3).

## II.     LEGAL STANDARDS

Here, Defendant Grajales has moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6), and the remaining Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56.

### A.  Motion to Dismiss Standard

The bare minimum a plaintiff must set forth in his complaint is found in Fed. R. Civ. P. 8. Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   The United States Supreme Court has explained, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that while particularity is not required under Fed. R. Civ. P. 8, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   Plausibility means "more than a sheer possibility that a defendant has acted unlawfully."   *Id.*   "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  In short, to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Iqbal* and *Twombly*.   First, the court will "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).   Then, "where there are well-pleaded factual allegations," the court will "'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

In applying this two-step approach to determine the complaint's sufficiency under Rule 8 (and in turn the plausibility of the claims), the Eleventh Circuit limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Further, the Court can infer "'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682) (brackets omitted).

And, while *pro se* pleadings are liberally construed, courts are not required to "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Inv., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) *overruled in part on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir.2010) ("[E]ven in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action."); *cf. Moon v. Newsome*, 863 F.2d 835,

837 (11th Cir. 1989) ("[O]nce a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").

### B.  Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   In applying this standard, the Court reviews "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits."   *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008).   The Court considers the "evidence and reasonable factual inferences drawn therefrom in a light most favorable to the non-moving party."   *Id.*   The moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   If the movant is successful on this score, the non-moving party must then come forward with sufficient evidence to establish the existence of the elements on which she will bear the burden of proof at trial.   *Id.* at 322-23.   The non-moving party may not simply rest on the pleadings, but must use evidence such as affidavits, depositions, answers to interrogatories, or admissions on file to show that there is a genuine issue of material fact that remains for trial.   *Id.* at 324.

## III.   DISCUSSION

Defendants present several arguments in support of their motions and the Court will address each argument in turn.   Also, as a preliminary matter, Plaintiff's claims are pled only against each defendant in his or her individual capacity.   (Doc. 17, p. 7).   Thus, Plaintiff's constitutional claims against the individual defendants alleged pursuant to 42 U.S.C. § 1983 must be construed as *Bivens* claims.   *See Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir.1995).

### A.  Dr. Grajales.

Dr. Olga Grajales has moved to dismiss the claims against her pursuant to Fed. R. Civ. P. 12(b)(6) on the basis of absolute immunity.   In accordance with the theory advanced by counsel for the government, the availability of claim under the Federal Tort Claims Act against the United States precludes a *Bivens* lawsuit against Dr. Grajales, who is a Public Health Service employee. Additionally, I submit that Dr. Grajales is entitled to the dismissal of the claims against her on the basis of qualified immunity.

*1. Absolute Immunity*

To begin, in her declaration Dr. Grajales states that she is "currently employed by the United States Government, Federal Bureau of Prisons, as the Clinical Director at the Federal Correctional Complex in Coleman, Florida ("Coleman") and [has] been so employed since June 6, 2010."   (Doc. 46-1, ¶ 1).   Further, she states, "I am also currently a Captain in the United States Public Health Service, and have been so employed since June 24, 1991."   (Doc. 46-1, ¶ 1).

Dr. Grajales contends that she is absolutely immune from individual liability for actions arising out of her performance of medical or related functions within the scope of her employment. Indeed, the basis for Plaintiff's claims against Dr. Grajales is that, while acting as Clinical Director at Coleman, she allegedly failed to perform duties such as providing tests, medication and treatment for Plaintiff's medical complaints.   (Doc. 17, p. 7, ¶ 1; p. 8, ¶ 8; p. 10, ¶ 19; p. 11, ¶ 22).

Thus, Dr. Grajales argues that she is absolutely immune from a *Bivens* lawsuit, citing *Carlson v. Green*, 446 U.S. 14 (1980).   In *Carlson*, the Supreme Court held that *Bivens* is not available "when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective."   *Id.* at 18.   Congress provided such an alternative remedy against employees

of the Public Health Service in 42 U.S.C. § 233(a), which provides: "The [FTCA] remedy against the United States provided by [28 U.S.C. §§ 1346(b) and 2672] for damage for personal injury, including death, resulting from the performance of medical ... or related functions ... by any [PHS] commissioned officer or employee ... while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee."

Courts have uniformly held that the availability of an FTCA claim[4] against the United States precludes a *Bivens* lawsuit against Public Health Service (PHS) employees.   *See, e.g., Baez v. Arbuckle*, 2006 WL 3349591 (M.D. Ga. 2006); *Seminario Navarrete v. Vanyur*, 110 F.Supp.2d 605 (N.D. Ohio 2000); *Gonzalez v. Holder*, 763 F.Supp.2d 145 (D.D.C. 2011).   In *Hui v. Castaneda*, 559 U.S. 799 (2010), the United States Supreme Court held that 42 U.S.C. § 233(a) resolves the discussion as to whether public health employees can be sued for the performance of medical or medically related functions.   *Id.* at 805.   The Court stated, "Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct."   *Id.* at 806.

Here, Dr. Grajales states in her declaration that she is currently a Captain in the United States Public Health Service, and has been so employed since 1991.   (Doc. 46-1, ¶ 1).   Dr. Grajales then sets forth the medical care that she provided to the Plaintiff.   Dr. Grajales therefore submits in her motion that she was employed by the PHS and acting within the scope of her

_____

[4] Plaintiff's Amended Complaint (Doc. 17) fails to allege a claim pursuant to the FTCA.

employment when she is alleged to have administered medical care to the Plaintiff and, according to him, violated his constitutional rights.   These points are not disputed by Plaintiff.   (Doc. 50).

Indeed, the Defendant's position that she is entitled to absolute immunity is consistent with *Carlson* and the plain language of the 42 U.S.C. § 233(a) itself, and also with *Seminario Navarret v. Vanyur*, 110 F. Supp.2d 605, 606, and *Walls v. Holland*, 1999 WL 993765 (6th Cir. Oct. 18, 1999), where the prisoner-plaintiffs in those two cases attempted to sue PHS Officers who provided them with medical care while incarcerated.   *See also Baez v. Arbuckle*, 2006 WL 3349591, No. 6:06-cv-13 (M.D. Ga. Nov. 17, 2006) (holding defendant was acting in his authority as a PHS officer when denying plaintiff's request for surgical repair of hernia, and was therefore immune from *Bivens* action); *Gonzalez v. Holder,* 763 F. Supp.2d 145, 146 (D.D.C. 2011) (holding that *Bivens* claims against prison Health Services Administrator, who was also a commissioned PHS officer, were precluded by 42 U.S.C. § 233(a)).   Accordingly, I submit that Dr. Grajales is entitled to absolute immunity.

### 2. *Qualified Immunity*

Further, Dr. Grajales is also entitled to qualified immunity.   Here, the Court is obliged to review the Plaintiff's claim against Dr. Grajales and shall dismiss it, notwithstanding the payment of a filing fee, if it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune.   *See* 28 U.S.C. §§ 1915A & 1915(e)(2). Indeed, 28 U.S.C. § 1915A is a screening provision to be applied *sua sponte*.   Notably, the phrase "fails to state a claim upon which relief may be granted" has the same meaning as the nearly identical phrase in Federal Rule of Civil Procedure 12(b)(6).   Therefore, the standards that apply to a dismissal under Fed. R. Civ. P. 12(b)(6) apply to a dismissal under § 1915A(b)(1). *See Leal v. Georgia Dept. of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001) (noting that the language in §

1915A(b)(1) mirrors the language in 28 U.S.C. § 1915(e)(2)(B)(ii), which tracks the language in Rule 12(b)(6)).

In a lawsuit against a federal employee for a constitutional violation, it is well established that government agents are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   When considering a plaintiff's claim against a government actor in his or her individual capacity, the Court generally first determines whether plaintiff's allegations, if true, establish a constitutional violation.   *Hope*, 536 U.S. at 736.   To state a plausible claim for relief, the facts alleged by the Plaintiff must contain sufficient allegations to show that the individual defendant personally participated in the alleged constitutional violation.   *See, e.g., Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).

Dr. Grajales is entitled to qualified immunity and the dismissal of the claims against her because Plaintiff's allegations fail to establish a constitutional violation.   Indeed, as discussed below, the same is true of the other individual Defendants in this case (who all raised the defense of qualified immunity).

As to Dr. Grajales, Plaintiff's allegations are insufficient to withstand dismissal on the basis of qualified immunity.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   For example, Plaintiff alleges that he started going to sick call in December of 2012 complaining about his extreme pain due to chronic disc disease.   (Doc. 17, ¶ 3).   Plaintiff contends Dr. Grajales failed in her obligation "to do whatever possible" to provide adequate medical treatment (Doc. 17, ¶ 19).   Although he alleges Dr. Grajales and the other Defendants "did nothing to remedy [his] pain," he admits he received treatment including further x-rays and that his "case was looked at by the

Clinical Director, Dr. Grajales," and that she determined no further tests were needed.   (¶ 9).

Plaintiff alleges that it took 10 months to receive an MRI (¶ 20), and that "defendants knew a year

ago and disregarded my risks of serious injury by not promptly doing the MRI (¶ 28).   As is

evident from his Complaint, Plaintiff's claim is not that he was denied treatment, but that, in his

opinion, the treatment he received was not adequate or sufficiently aggressive.

It is well settled that to establish an Eighth Amendment violation stemming from the

deprivation of medical attention, a prisoner must set forth evidence of an objectively serious

medical need and prove that the officials acted with attitudes of deliberate indifference to his needs.

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).   A claim that a prisoner has been deprived

of medical attention requires that the prisoner demonstrate (1) "an objectively serious medical

need," so grave that, "if left unattended, poses a substantial risk of serious harm," and (2) that the

officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of

pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even

medical malpractice actionable under state law."   *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th

Cir. 2000).   "It is obduracy and wantonness, not inadvertence or error in good faith, that

characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"   *Whitley v.*

*Albers*, 475 U.S. 312, 319 (1986).

Whether governmental actors should have employed additional diagnostic techniques or

forms of treatment is a matter for medical judgment, however, and therefore not an appropriate

basis for grounding liability under the Eighth Amendment.   *Waldrop v. Evans*, 871 F.2d 1030,

1033 (11th Cir. 1989).   Plaintiff's contention that a more aggressive course of treatment should

have been followed is insufficient to support his clam for deliberate indifference against Dr.

Grajales (or the others).   *See Bismark v. Fisher,* 213 Fed.Appx. 892, 897 (11th Cir.2007) (doctor's

failure to adopt plan of care prescribed by outside physician after exercising independent professional judgment did not support deliberate indifference); *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (doctor's failure to administer a stronger course of treatment considered a matter of medical judgment not deliberate indifference).

Moreover, in order to establish deliberate indifference under *Farrow*, Plaintiff must show more than mere negligence: "a prison official cannot be found deliberately indifferent under the Eighth Amendment 'unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Farrow*, 320 F.3d at 1245 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff's only allegations regarding the deliberate indifference of Dr. Grajales are nothing more than legal conclusions, which must be disregarded. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (the court will "eliminate any allegations in the complaint that are merely legal conclusions"). Meanwhile, Plaintiff's well-pleaded factual allegations belie his claim and confirm that he received treatment, including a series of x-rays and an MRI, and that Dr. Grajales personally reviewed his case and concluded no further tests were necessary. In other words, Plaintiff's own allegations establish that Dr. Grajales was not indifferent and that Plaintiff actually received treatment for his medical needs.

Accordingly, I submit that Dr. Grajales is also entitled to the dismissal of the claims against her on the basis of qualified immunity, as Plaintiff has failed to state a claim upon which relief can be granted.

### B.  Warden Jarvis, Administrator Perez, and Dr. Newland

Plaintiff has also sued Tamyra Jarvis, Complex Warden (Doc. 47-2); Minerva Perez (Doc. 47-4), an administrator; and Dr. Rolando Newland, a physician employed at Coleman (Doc. 48-3), under the same theory under the Eighth Amendment for deliberate indifference to his medical needs.   Defendants argue that they are each entitled to qualified immunity and the entry of summary judgment, as Plaintiff has failed to sufficiently allege or establish any constitutional violation.   I agree.

As discussed earlier, in order to overcome an individual government defendant's entitlement to qualified immunity, as is required here, the Plaintiff's pleadings or filings must contain sufficient allegations to show that each named defendant personally participated in the alleged constitutional violation, as each individual Defendant can only be liable for his or her own misconduct.   *See, e.g., Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir. 2003); *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").   Thus, in order to withstand a dismissal, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."   *Ashcroft v. Iqbal*, 129 S. Ct. at 1948.   Bare assertions of misconduct on the part of a government defendant, without factual allegations sufficient to plausibly suggest each individual defendant's culpability, are not sufficient to survive dismissal.   *See, e.g., id.* at 1951-53.   Plaintiff must allege the relevant facts with specificity to support his claims against <u>each</u> individual Defendant.   That is, Plaintiff must allege facts sufficient to show that each named defendant personally participated in the alleged constitutional violation.   *See Gonzalez v. Reno,* 325 F.3d at 1234.

And, as stated, deliberate indifference, which the Plaintiff must establish, requires a showing of more than mere negligence: "a prison official cannot be found deliberately indifferent under the Eighth Amendment 'unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Farrow*, 320 F.3d at 1245 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).   Here, the Plaintiff does not make this showing, nor does he present evidence to rebut the individual Defendants' showing that they were not indifferent and that Plaintiff actually received treatment for his medical needs.

### 1. No Supervisory Liability as to Jarvis and Perez

First, as to Jarvis and Perez, the record reveals that they were acting in their roles as supervisors and that there is no basis to impute liability on them in that capacity.   As to Defendants Jarvis and Perez, the record reveals the following.   Jarvis is the warden at Coleman, and Plaintiff contends she responded to his grievance regarding his medical problems.   (Doc. 17, ¶¶ 8-9). Perez is the Health Services Administrator at Coleman, and directs the clinical and administrative functions of the Coleman health care system.   (Doc. 47-4, ¶ 2).   She is not a doctor.   (Doc. 47-4, ¶ 3).   Although Perez does not recall reviewing any specific requests from Plaintiff, her routine practice would have been to advise him to seek treatment for acute problems by reporting to sick call or visiting the Chronic Care Clinic.   (Doc. 47-4, ¶ 4).

Plaintiff cannot maintain his *Bivens* claims against Jarvis or Perez because the claims are based on a theory of vicarious liability.   Indeed, Plaintiff does not contend that Jarvis or Perez were responsible for providing actual medical treatment to him.   Rather, his own allegations show that he sought them out as administrators to bring to their attention the alleged failure of

subordinates to provide adequate medical treatment.   It is well established in the Eleventh Circuit that supervisory officials are not liable under § 1983 or *Bivens* for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.   *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).   Rather, the supervisor might be subjected to individual liability when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.   *Id.*   A causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation.   *Id.*

Defendants Jarvis and Perez argue that there is no evidence of an obvious, flagrant, rampant and continued widespread failure to provide medical care at Coleman such that Jarvis or Perez would know Plaintiff was not receiving needed care.   Indeed, as to Plaintiff, as set forth *supra*, the record in this case shows that on numerous occasions, he sought and received medical care from prison physicians, mid-level providers, and other specialists.   There is no evidence of any policy in place that was so widespread as to put these two defendants on notice of a need to correct an alleged constitutional deprivation or that resulted in deliberate indifference to the medical needs of other inmates.   Rather, the record shows that policies were in place that allowed for numerous avenues of treatment, as well as a grievance policy to address unresolved complaints.   (Doc. 46-1).   Dr. Grajales described Coleman's procedures for both formal and informal grievances. (Doc. 46-1, ¶ 5).   It is undisputed that Plaintiff successfully availed himself of the procedures for obtaining care.

Plaintiff's claims are thus insufficient to withstand both a motion to dismiss on the basis of qualified immunity (*see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution.")), and summary judgment (*see Holifield v. Reno*, 115 F.3d 1555, 1564 n.4 (11th Cir. 1997) (A plaintiff's "conclusory assertions to the contrary, in the absence of supporting evidence, are insufficient to withstand summary judgment.").   Plaintiff has, therefore, failed to present sufficient allegations or evidence to establish that Defendants Jarvis and Perez acted with deliberate indifference to his safety and health.

### 2. No Constitutional Violations as to Jarvis, Perez and Newland

In any event, and perhaps more importantly, Warden Jarvis, Administrator Perez, *and* Dr. Rolando Newland are each entitled to qualified immunity and the entry of summary judgment in their favor on Plaintiff's claims for deliberate indifference to his medical needs as he has failed to demonstrate that each Defendant's response to his medical needs, and the care provided to him, was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."   *Taylor*, 221 F.3d at 1258.   In fact, it appears that rather than inadequate or negligent, the facts surrounding Plaintiff's record of care demonstrate that the medical staff at Coleman was responsive regarding Plaintiff's medical needs.   This is all to say that Plaintiff has failed to establish a constitutional deprivation by each or any of the individually named Defendants.

First, the allegations of Plaintiff's own Complaint establish that he was receiving medical treatment, including treatment during sick call, x-rays, follow-up x-rays, and an MRI for his complaints of chronic disc disease (Doc. 17).   He further concedes that his case was reviewed by Dr. Grajales and that she determined no further tests were necessary.   (Doc. 17, ¶ 9).

In addition, the facts outside the pleadings regarding Plaintiff's care, as summarized by Dr. Grajales and Dr. Newland, are uncontroverted.   It is apparent that Plaintiff received treatment, including pain medication and, eventually, further testing.   Plaintiff was familiar with and availed himself of the various means of receiving treatment, including reporting to sick call and using the grievance procedures.   The record reflects that Plaintiff was seen by physicians and other providers numerous times during the relevant time period, and his treatment included having medications renewed or adjusted, conducting x-rays, visits with an orthopedic doctor, and other tests.   (Doc. 47-3, ¶ 4).   Dr. Newland ultimately referred Plaintiff for an orthopedic consult and MRI after conservative treatment did not resolve the problem.   (Doc. 48-3, ¶¶ 8-12).   Meanwhile, Plaintiff's concerns regarding the x-ray revealing "spots" in his pelvic region were addressed by a follow-up x-ray that was normal, and a review by Dr. Grajales.   (Doc. 47-3, ¶ 13).   These facts are completely consistent with his well-pled factual allegations.

In support of his claims, Plaintiff has presented a number of declarations from fellow inmates who either observed Plaintiff experiencing pain from his back condition, or have their own grievances with the health care system at Coleman.   (Docs. 52-57).   Plaintiff has also submitted copies of approximately 100 emails that he alleges he sent "daily," to staff complaining about his condition and requesting help.   (Doc. 50-3).   Notably, Dr. Grajales explained that "it is impossible to tell which requests were actually submitted."   (Doc. 47-3, ¶ 5).   Of course, "[c]onclusory, self serving, or uncorroborated allegations in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment or directed

verdict."   *Smith v. HCA Inc.*, 2005 WL 1866395 (M.D. Fla. July 26, 2005) *aff'd,* 183 F. App'x 854 (11th Cir. 2006).[5]

Further, even if it is assumed that Plaintiff actually sent all of the staff requests and emails he contends, they do not controvert the record evidence regarding his access to care, and the fact that he successfully availed himself of that care through the avenues at Coleman.   Plaintiff has provided no evidence to directly contradict the records submitted by Defendants regarding his care.   Plaintiff's treating physician, Dr. Newland, summarized his treatment and explained that conservative treatment, such as pain medication, was an appropriate course of treatment for Plaintiff's condition.   (Doc. 48-3, ¶ 8).[6]

At the end of the day, Plaintiff has failed to demonstrate that any prison physician or official was deliberately indifferent to his medical needs.   Rather, the record demonstrates that Plaintiff was seen on a regular basis, and was given a comprehensive (although initially conservative) treatment plan for his back pain.   As Defendants argue, Plaintiff is really claiming not that he was denied treatment, but that – in his non-medical opinion – the treatment he received was inadequate. Plaintiff alleges, "I will show proof that the defendants knew a year ago and disregarded my risks of serious injury by not promptly doing the MRI and thus placing my health and safety in jeopardy."   (Doc. 17, p. 12).   Yet, mere disagreement over the course of treatment does not give

---

[5] See also *Hall v. Sunjoy Industries Group Inc.*, 764 F. Supp. 2d 1297, 1304 (M.D. Fla. 2011) ("The Court can disregard an unsupported affidavit that contradicts the evidence."); *Miranda v. B&B Cash Grocery Stores, Inc.,* 1990 WL 107559, *4 (M.D. Fla. May 4, 1990) ("The portion of plaintiff's declaration relied upon contains merely self-serving conclusory allegations mirroring those contained in her complaint and, therefore, is insufficient to raise a genuine issue of fact for trial so as to avoid summary judgment on this claim.").

[6] Likewise, Plaintiff offers nothing to dispute Dr. Grajales's summary of his treatment, or her opinion that the care was "consistent with the standard of care expected of general practitioners caring for a patient with complaints of back pain."   (Doc. 47-3, ¶ 13).   Dr. Grajales stated that, "Physicians are trained that, as a first step, to attempt to treat back pain caused by mild degenerative disc disease conservatively through exercise and pain medication."   (Doc. 47-3, ¶ 11).

rise to an Eighth Amendment claim. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and not an appropriate basis for grounding liability under the Eighth Amendment. *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995).

Notably, Plaintiff has offered nothing to create an issue of fact regarding Dr. Newland's statement that his treatment was appropriate for his condition. The facts before the Court do not reveal that the medical staff at Coleman acted with deliberate indifference to a known serious medical condition, as they responded to the Plaintiff's complaints, provided care when he presented with back pain, and followed up on specific concerns regarding his x-ray. Indeed, Dr. Newland examined Plaintiff's x-rays, adjusted his medication and, when conservative treatment did not resolve the problem, referred for an orthopedic consult and MRI. Ultimately, Dr. Newland recommended neurosurgery. (Doc. 48-3, ¶¶ 8-12).

The fact that Plaintiff would have preferred a more aggressive course of treatment is not sufficient to support deliberate indifference. *See Smith v. Florida Dep't of Corrections,* 375 Fed.Appx. 905, 910 (11th Cir.2010) (inmate's disagreement with prison medical staff concerning the course of treatment did not support deliberate indifference); *Bismark v. Fisher,* 213 Fed.Appx. 892, 897 (11th Cir.2007) (doctor's failure to adopt plan of care prescribed by outside physician after exercising independent professional judgment did not support deliberate indifference); *Adams,* 61 F.3d at 1546 (doctor's failure to administer a stronger course of treatment considered a matter of medical judgment not deliberate indifference).

Accordingly, each of these individual Defendants are entitled to dismissal of Plaintiff's Eighth Amendment *Bivens* claims for deliberate indifference to his medical needs on the basis of qualified immunity and the entry of summary judgment in their favor.

IV.     **CONCLUSION**

For the reasons explained above, it is respectfully recommended that the motions filed by

the Defendants (Docs. 46, 47, and 48) be granted in all respects.

**DONE AND ENTERED** in Ocala, Florida on March 14, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:
United States District Judge
Counsel of Record
Unrepresented Parties